DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| ADELBERT M. BRYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2014-066 |
| ) | |
| CAROLINE F. FAWKES, in her Official ) | |
| Capacity as Supervisor of Elections and V.I. ) | |
| JOINT BOARDS OF ELECTIONS, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| ALICIA "CHUCKY" HANSEN, ) | |
| ) | |
| Defendant/Intervenor. ) | |

**Attorneys:**
**Emile A. Henderson, III, Esq.,**
St. Croix, U.S.V.I.
   *For the Plaintiff*

**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
   *For the Defendants*

**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
   *For the Defendant/Intervenor*

### MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Notice of Removal" filed by Alicia "Chucky" Hansen (Dkt. No. 1); the "Amended Joinder in Notice of Removal" filed by Defendants Caroline Fawkes ("Defendant Fawkes"), as Supervisor of Elections for the Virgin Islands, and the Virgin Islands Joint Boards of Elections ("Defendant Joint Boards") (Dkt. No.

3); and the Motion for Remand filed by Plaintiff Adelbert Bryan ("Bryan") (Dkt. No. 6). For the reasons that follow, the Court will grant Bryan's Motion for Remand, and remand this matter to the Superior Court of the Virgin Islands.

## I. BACKGROUND

Senator Alicia "Chucky" Hansen ("Senator Hansen") is a current Senator in the 30th Legislature of the Virgin Islands and a candidate for the 31st Legislature of the Virgin Islands. (Dkt. No. 1-2 at 61). On May 19, 2014, in the wake of Senator Hansen's certification as a candidate for the November 4, 2014 general election by Defendant Fawkes, Bryan filed a petition in the Superior Court of the Virgin Islands alleging that Senator Hansen was ineligible to hold senatorial office in the Legislature because she was convicted of three misdemeanor counts of willful failure to file income tax returns in 2008. (Dkt. No. 1-3). The Superior Court dismissed Bryan's petition; Bryan appealed to the Supreme Court of the Virgin Islands; and the Supreme Court reversed the Superior Court's decision. (Dkt. No. 1-2 at 61). By Order entered on August 29, 2014, the Superior Court—per the Opinion and Order of the Supreme Court—directed Defendant Fawkes to "set aside" Senator Hansen's nomination papers, and remove Senator Hansen's name from the ballot for the upcoming November 4, 2014 general election. (*Id.* at 52). The Supreme Court's Order was premised on its finding that Senator Hansen's tax convictions constituted crimes involving moral turpitude, which rendered her ineligible to serve in the Legislature pursuant to Section 6(b) of the Revised Organic Act of 1954, 48 U.S.C. § 1572(b). (*Id.* at 48–50).[1] In accordance with the Supreme and Superior Court Orders, Defendant Fawkes

---

[1] The Revised Organic Act is a federal statute which "is 'the Virgin Islands' equivalent of a constitution.'" *Gov't of V.I. v. Rivera*, 333 F.3d 143, 145 (3d Cir. 2003) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993)). Under Section 6(b), an individual is rendered ineligible to be a member of the Legislature if convicted of a crime involving moral turpitude, unless pardoned. 48 U.S.C. § 1572(b).

set aside Senator Hansen's nomination papers and removed her name from the ballot for the November 4, 2014 general election. (*Id.* at 62). For clarity, the action filed by Bryan in the Superior Court and appealed to the Supreme Court will be referred to as the "pre-pardon action."

On September 3, 2014, John P. de Jongh, Jr., Governor of the Virgin Islands, pardoned Senator Hansen of her tax convictions, pursuant to his powers under the Revised Organic Act. (*Id.*). Senator Hansen then filed new nomination papers, but Defendants refused to place her name on the ballot because of the existing Supreme and Superior Court Orders entered in the pre-pardon action. (*Id.*). In response to Defendants' refusal to place Senator Hansen on the ballot notwithstanding the Governor's pardon, Senator Hansen and her supporters filed actions in this Court arguing that, because the Governor's pardon restored Senator Hansen's eligibility to run for, and serve in, the 31st Legislature, Defendants' refusal to place her name on the ballot failed to give effect to provisions of the Revised Organic Act; violated various constitutional provisions; and deprived them of their civil rights. (1:14-cv-0053, Dkt. No. 1; 1:14-cv-0055, Dkt. No. 1). For clarity, the actions filed by Senator Hansen and her supporters in the federal District Court will be referred to as the "post-pardon actions."

This Court had jurisdiction over the post-pardon actions because Senator Hansen and her supporters' claims required an interpretation of the Revised Organic Act—a federal statute—and because Senator Hansen and her supporters asserted constitutional violations and deprivations of their civil rights. It is also noteworthy that, central to the post-pardon actions were the existence of the Governor's pardon and its effect on Senator Hansen's eligibility for senatorial office—critical factors that were not in existence at the time of, and therefore not at issue in, the pre-pardon local court action.

3

After briefing and oral argument in the post-pardon actions, this Court entered a Temporary Restraining Order and then a Permanent Injunction, both of which directed Defendants Fawkes and the Joint Boards to place Senator Hansen's name on the ballot for the November 4, 2014 general election. (1:14-cv-0053, Dkt. Nos. 20, 26; 1:14-cv-0055, Dkt. Nos. 15, 20). Defendants complied with this Court's Orders. The Court also issued declaratory relief that the Governor's pardon removed any impediment under Section 6(b) of the Revised Organic Act to Senator Hansen's eligibility to run for senatorial office in the Legislature of the Virgin Islands based on her tax convictions. (1:14-cv-0053, Dkt. No. 26; 1:14-cv-0055, Dkt. No. 20).

Between this Court's issuance of the Temporary Restraining Order and the Permanent Injunction in the post-pardon actions, the Supreme Court of the Virgin Islands entered an Order denying a Petition for Rehearing that Defendant Fawkes had filed with the Supreme Court in the pre-pardon action. *Bryan v. Fawkes*, S. Ct. Civ. No. 2014-0046 (V.I. Sept. 12, 2014). After the Supreme Court denied Defendant Fawkes' Petition for Rehearing in the pre-pardon action, but before this Court issued its Permanent Injunction in the post-pardon actions, Bryan filed an "Emergency Motion for Enforcement of Judgment and for Contempt Sanctions" in the pre-pardon action in the Superior Court, requesting that the Superior Court issue an Order to Show Cause why Defendant Fawkes should not be held in contempt for failing to abide by the Superior Court's August 29, 2014 pre-pardon Order. (Dkt. No. 1-2 at 1). Bryan further requested in his Emergency Motion that the Superior Court enforce its pre-pardon Order, which directed Defendant Fawkes to remove Senator Hansen's name from the ballot for the upcoming November 4, 2014 general election. (*Id.*).[2]

---

[2] The Court notes that, based on the captions in the initial Superior Court pre-pardon action and the Supreme Court appeal, Bryan's Emergency Motion is the first time, to this Court's knowledge, that the Defendant Joint Boards appeared in the caption of the pre-pardon action. It

4

Senator Hansen removed the pre-pardon action to this Court on September 23, 2014, asserting that this Court has jurisdiction over Bryan's requests in his Emergency Motion. (Dkt. Nos. 1). Defendants Fawkes and the Joint Boards joined in the Notice of Removal the same day (Dkt. No. 3), and Bryan filed his Motion for Remand on September 26, 2014 (Dkt. No. 6).

## II. APPLICABLE LEGAL PRINCIPLES

The removal of cases from state to federal court is governed primarily by Sections 1441 and 1446 of Title 28 of the United States Code. Section 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

The parties seeking removal—here, Senator Hansen and Defendants Fawkes and the Joint Boards—bear the burden of establishing federal jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 397 (3d Cir. 2004) ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986) (because removal jurisdiction raises substantial federalism concerns, it is to be strictly construed; "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system.");

---

is unclear to the Court whether the Joint Boards are in fact parties to the pre-pardon action. Nonetheless, because the Joint Boards were included in the caption of Senator Hansen's "Notice of Removal," as well as in the filings that have followed, this Court has included them in its caption of the case.

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *KIA Motors*, 357 F.3d at 396 ("28 U.S.C. § 1441 is to be strictly construed against removal.").

In considering whether removal jurisdiction under Section 1441 exists based on original "federal question" jurisdiction, federal courts must determine if "a claim aris[es] under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)." 28 U.S.C. § 1441(c).[3] In making this determination, courts apply the rule of the "well-pleaded complaint," under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391–92 (1988). A removed case must be remanded if the District Court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

Senator Hansen and Defendants claim that this case became removable when Bryan filed his Emergency Motion. (Dkt. No. 1 at 4–5; Dkt. No. 3 at 1–2); s*ee* 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").[4] Because Senator Hansen and Defendants have proffered

---

[3] Because the "arising under" language found in Section 1441 is nearly identical to the "arising under" language contained in Section 1331, the scope of removal based on "arising under" jurisdiction under Section 1441 is considered to be identical to that under Section 1331. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 391–92 (1987).

[4] Senator Hansen also argues that this Court "has independent federal question jurisdiction over the underlying action giving rise to the contempt motion because the dispute was premised exclusively over the interpretation of the requirements of Section 6 of the Revised Organic Act . . . , which is, itself, a federal statute created by Congress." (Dkt. No. 1 at 5). Even assuming that this Court had jurisdiction over the pre-pardon action, a notice of removal must be filed within thirty days of the defendant's receipt of the initial pleading. 28 U.S.C. § 1446(b)(1). The pre-pardon action was initiated on May 19, 2014, and Senator Hansen's motion to intervene was granted on June 18, 2014. Accordingly, it is too late to remove the pre-pardon action based on Bryan's initial pleading.

an argument for removal here based on Bryan's Emergency Motion, the Court will consider federal question jurisdiction in the context of the Emergency Motion. *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3734 at 668–71 (4th ed. 2009) ("The passage in [Section 1446(b)(3)] to the effect that a previously unremovable case may be removed by filing a notice of removal within 30 days of receipt of an 'amended pleading, motion, order or other paper' from which it first appears that the case is removable demonstrates that any of the referred-to papers may be considered in determining the removability of a case . . . .") (quoting 28 U.S.C. § 1446(b)(3)); *Atwell v. Boston Sci. Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013) (holding that "oral statements, made at a court hearing and later transcribed, like deposition testimony, satisfy § 1446(b)(3)'s 'other paper' requirement."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886–87 (9th Cir. 2010) (holding that "a plaintiff's response to deposition questions can constitute 'other paper' within the meaning of section 1446(b)," from which a party and court can determine that a case is removable); *Hemmelgarn v. City of Seattle*, 2014 U.S. Dist. LEXIS 33599 (W.D. Wash. Mar. 13, 2014) (holding that a plaintiff's statements at his deposition that he intended to assert federal causes of action made the case removable under Section 1446(b)(3)).[5] Although Senator Hansen and Defendants did not timely remove the initial pleading in the pre-pardon action, *see supra* note 4, Bryan's Emergency Motion—filed in the pre-pardon action after the issuance of the pardon—effectively changed the character of the action and the issues presented, thus permitting removal in the context of the Emergency Motion to be deemed timely. *See* 14C Wright & Miller, *Federal Practice and Procedure* § 3731 at 567– 68 (noting that removing an initially removable action—after expiration of the thirty days

---

[5] As the foregoing authorities demonstrate, even assuming the validity of Bryan's questionable contention that this Court lacked jurisdiction over the pre-pardon action because it allegedly involved a purely local matter, it would not follow, as Bryan maintains, that "removal of [the] instant motion is improper as a matter of law." (Dkt. No. 6 at 6).

7

permitted for removal under Section 1446(b)(1)—pursuant to Section 1446(b)(3)'s "other paper" exception may be considered timely if the "['other paper'] provides a new basis for removal or changes the character of the litigation so as to make it substantially a new suit. This seems quite appropriate since a willingness on the part of the defendant to remain in state court to litigate a particular claim should not be interpreted as a willingness to remain in state court to adjudicate an entirely different claim.").[6]

### III.   DISCUSSION

**A.    Framing the Issues**

The Court begins by noting the unusual posture of this matter. In his Emergency Motion, Bryan requests that the Superior Court do two things. First, Bryan requests that the Superior Court issue an Order to Show Cause why Defendant Fawkes should not be held in contempt for allegedly violating the Superior Court's August 29, 2014 Order in the pre-pardon action. Second, Bryan requests that the Superior Court enforce its August 29, 2014 pre-pardon Order, which directed Defendant Fawkes to "set aside" Senator Hansen's nomination papers, and remove Senator Hansen's name from the general election ballot.

Given the nature of the requests, one wonders—in the first instance—what role this Court could possibly have in resolving an alleged controversy over the current effect of the Superior Court's pre-pardon Order. Indeed, it would seem intuitive that it is the Superior Court, not this Court, that should determine the merits of Bryan's assertion that Defendant Fawkes should be held in contempt of court for allegedly violating the Superior Court's August 29, 2014 pre-pardon Order. It would seem equally intuitive that the Superior Court, not this Court, should determine whether the Superior Court's August 29, 2014 Order from the pre-pardon action

---

[6] Thus, in the final analysis, whether the initial action was removable or not has no bearing on potential removability of the action based on Bryan's Emergency Motion.

should be enforced. However, upon reviewing the submissions by the parties, it is apparent to this Court that a contrary conclusion appears plausible only because of the inappropriately broad strokes in which some of the parties' positions are painted; the lack of precision and clarity that has accompanied this broad-brush approach; and the tangled web of federal and local issues that has unfortunately also resulted.[7]

This Court's analysis here focuses on untangling the web and, in so doing, attempting to bring a measure of clarity to the issues, in order to determine whether the claims that underlie the instant Motion "arise under" federal law for purposes of assessing this Court's jurisdiction. As discussed below, this Court concludes that it does not have jurisdiction over Bryan's Emergency Motion because the underlying claims—when properly viewed—can, and should, be premised on local law. Therefore the Court will grant Bryan's Motion for Remand, and remand this action to the Superior Court.

**B.     Analysis**

Senator Hansen argues that, in order for Bryan "to prevail on his contempt claim, the Superior Court will *necessarily* have to resolve whether this Court's [Temporary Restraining] [O]rder was issued without authority or with a complete lack of jurisdiction, which also presents a substantial federal question, that only this [C]ourt is authorized to resolve." (Dkt. No. 1 at 5) (citations omitted) (emphasis added). However, this Court does not find that this is "necessarily" so. While admittedly, some portions of Bryan's arguments—in both his Emergency Motion and

---

[7] This lack of precision and clarity is particularly troubling when it results in utterly misleading advocacy. For example, Plaintiff's Motion for Remand can be read to suggest that this Court improperly positioned itself as an appellate court to the Superior and Supreme Courts of the Virgin Islands. (Dkt. No. 6 at 10). Even a cursory review of this Court's Temporary Restraining Order and Permanent Injunction Opinions belies—and should dispel—any such suggestion. In a hotly contested matter, which is being played out in a politically charged and polarized environment, what is needed is less heat and more light. Regrettably, arguments of this nature provide just the opposite.

his Motion for Remand—appear to embody an all-encompassing, scatter-shot approach to the relief that he seeks, it is also true that Bryan repeatedly and vociferously insists that his Motion for Enforcement and Contempt is grounded solely in local law. (*See, e.g.*, Dkt. No. 6 at 1–2) ("Bryan filed his motion solely under local law—5 V.I.C. § 1176 and Superior Court Rule 111. At no time does Bryan's motion argue or invoke federal statutes . . . ."); (*id.* at 2) ("Bryan specifically contends that his motion is simply . . . a motion to enforce and for contempt predicated on purely local law."); (*id.* at 2–3) ("Further, [Bryan] contends that the District Court does not possess subject matter jurisdiction herein as there is no federal question related to [Bryan's] motion to enforce judgment and for contempt filed in the Superior Court of the Virgin Islands, and therefore, no federal question jurisdiction exists to confer subject matter jurisdiction [in the District Court].").

Taking Bryan's representations at face value and his local law mantra as the premise, Bryan's contempt argument must be grounded in Defendant Fawkes' alleged failure to mount a credible defense, *based on local law*, to this Court's issuance of injunctive relief (Dkt. No. 1-2 at 7, 11), and the alleged collusion that Bryan claims occurred between Defendant Fawkes and Senator Hansen (*id.* at 9–11). Similarly, relying again on Bryan's representations, his request that the Superior Court enforce its August 29, 2014 pre-pardon Order must also be grounded in local law.

To be sure, there are federal issues of great significance that are critical to the ultimate resolution of Senator Hansen's eligibility to be a member of the Legislature. In addition to the Governor's authority to issue pardons, the question of whether, as a result of the Governor's pardon of her tax convictions, Senator Hansen is now eligible to run for, and hold senatorial office clearly implicates federal law—specifically, an interpretation of Section 6(b) of the

Revised Organic Act. As noted, this Court answered those federal questions in the affirmative in entering the Temporary Restraining Order and Permanent Injunction in the post-pardon actions. Indeed, it would appear that Bryan agrees with this Court's conclusion in that regard, in view of his acknowledgment in his initial petition in the pre-pardon matter that "*absent a pardon* for [Senator Hansen's tax] convictions, she is forever barred from holding public office in the Virgin Islands." (Dkt. No. 1-3 at 11) (emphasis added).

Notwithstanding those federal issues, however, for purposes of the Emergency Motion Bryan adamantly maintains that "[*a*]*t no time* does Bryan's motion argue or invoke federal statutes" (Dkt. No. 1-2 at 2); that his motion is "*predicated on purely local law*" (*id.*) (emphasis added); and that there is "*no federal question* related to his motion to enforce judgment and for contempt filed in the Superior Court of the Virgin Islands, and therefore, no federal question jurisdiction exists to confer subject matter jurisdiction [in the District Court]" (id. at 2–3) (emphasis added). Accordingly, it is inconceivable that Bryan could credibly premise any argument in his Emergency Motion on an interpretation of Section 6(b) of the Revised Organic Act that would somehow render Senator Hansen ineligible to run for, or hold senatorial office—the federal issues that were the subject of this Court's rulings.

It is in issues of local law, therefore, that Bryan's Emergency Motion must be grounded. And, as previously articulated in this Court's Permanent Injunction Opinion, such issues exist. Indeed, separate and apart from the federal issues regarding Senator Hansen's eligibility to run for, and hold senatorial office, there remains the issue of ballot access—an issue governed by the Virgin Islands Elections Code.[8]

---

[8] The Court makes a distinction here between access to the ballot and other means through which a candidate might be able to run and be elected to office—e.g., through a write-in candidacy.

11

Bryan claims in his Emergency Motion that Senator Hansen should not be permitted to appear on the ballot on two grounds—both premised on local law. First, Bryan argues that Senator Hansen is precluded from appearing on the ballot because of a deadline imposed under the Virgin Islands Elections Code for submitting nomination materials. (Dkt. No. 1-2 at 8–9). Second, Bryan argues that the Supreme Court of the Virgin Islands' Order in the pre-pardon action denying Defendant Fawkes' Petition for Rehearing interpreted a provision of the Virgin Islands Elections Code in a manner that precludes Senator Hansen from appearing on the ballot for the 2014 general election. (*Id.* at 7). Accordingly, Bryan's argument that the Superior Court should enforce its August 29, 2014 Order in the pre-pardon action, which directed Defendant Fawkes to "set aside" Senator Hansen's nomination papers and remove Senator Hansen's name from the general election ballot, can—and should—be grounded purely on local Virgin Islands law.

Although this Court also addressed the Virgin Islands Elections Code—and the Order of the Supreme Court of the Virgin Islands upon which Bryan relies—in entering the Temporary Restraining Order and Permanent Injunction in the post-pardon actions, this Court's jurisdiction over those issues was ancillary to its jurisdiction over Senator Hansen and her supporters' claims involving the Revised Organic Act, their civil rights, and the United States Constitution. *See Coffelt v. Fawkes*, __ F.3d __, 2014 U.S. App. LEXIS 16421, at *7–8 (3d Cir. August 26, 2014). The fact that this Court—in properly exercising its supplemental jurisdiction over the local issues in the post-pardon actions—interpreted the relevant statutory provisions of the Virgin Islands Elections Code, and the Order of the Supreme Court of the Virgin Islands, differently than Bryan argues they should be interpreted, does not give this Court jurisdiction over Bryan's local claims in the pre-pardon action.

Senator Hansen and Defendants also argue that this Court has jurisdiction over this matter because Bryan's Superior Court claims implicate Senator Hansen's constitutional rights and the federal preemption doctrine. However, these arguments would be raised as defenses to Bryan's claims that the Superior Court should hold Defendant Fawkes in contempt, or should enforce its August 29, 2014 Order. Such federal defenses do not make the action removable. *See Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") (citation omitted); *Franchise Tax Bd.*, 463 U.S. at 10 ("Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.") (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *Bracken v. Matgouranis*, 296 F.3d 160, 163–64 (3d Cir. 2002).

In view of the foregoing, Senator Hansen and Defendants have not met their burden of establishing how the local law arguments discussed herein would "arise under federal law," thus conferring jurisdiction on this Court.  *KIA Motors*, 357 F.3d at 397. Accordingly, this Court concludes that it does not have jurisdiction over Bryan's claims in his "Emergency Motion for Enforcement of Judgment and for Contempt Sanctions," and, this matter must be remanded to the Superior Court.

## IV. CONCLUSION

For the foregoing reasons, this Court will grant Bryan's Motion for Remand, and will remand this matter to the Superior Court of the Virgin Islands. An appropriate Order accompanies this Memorandum Opinion.

Date: October 1, 2014  _____/s/_____
WILMA A. LEWIS
Chief Judge